Good morning, Your Honor, and may it please the Court, my name is Jesse Ritchie and with my co-counsel, Alan Baskin, we represent Pastor Stephen Henry and Iglesia Batista de Somerton. I'd like to reserve five minutes of my time, if possible, for rebuttal. I need your own time. Thank you, Your Honor. We wouldn't be here today if the City of Somerton hadn't enforced a facially discriminatory ordinance to prosecute Pastor Henry for practicing his faith without a conditional use permit. Because of the breadth of briefing and the issues presented in this case, I'd like to ask if there's any area the Court would like me to focus on. Why don't you go ahead and we'll look. I will just point out, I think the one issue I'm interested in is traceability on the facial challenge in terms of standing. Yes, Your Honor. So, what I would say as far as the traceability of the injury is everything really, the ordinance on its face is discriminatory in that it requires religious assemblies to get a conditional use permit while not requiring other assemblies to do so. We should be clear, we should be using the past tense here because by the time the lawsuit was filed, that ordinance had been changed. Yes, Your Honor. They had changed that ordinance and we briefed the District Court under the voluntary cessation doctrine that the municipality here shouldn't be given deference for changing that ordinance under the Bellevue City of Boise because they have argued continuously that there was nothing wrong with that ordinance, that that ordinance was constitutional, it was perfectly fine. They defended themselves in the lawsuit, but the reality is that several months before the lawsuit was filed, that problem was eliminated. Yes, Your Honor. As far as they did change that. I was reacting to the use of the present tense because usually these kind of arguments come up in the context of somebody who's fighting against something that's present now. This isn't present now, it wasn't present when the lawsuit was filed, it hadn't been present for months before the lawsuit was filed. Now it was present at a time in the past and you have arguments based on that, but it's not the usual argument that we hear where a city or some municipality is trying to enforce something in the current time. Yes, Your Honor, and I agree with that. They did change the ordinance, you know, but they retained the authority to change it back and they have argued continuously that there's no problem with it. Is there any serious prospect? Is there any reason we should suspect they're going to switch it back as soon as they can? I don't see that as a real looming threat. I wish I could tell you that that was the case, Your Honor. That would make my job a lot easier. You have about five different claims, so kind of. Yes, Your Honor. And I appreciate that, I mean, so in terms of a facial challenge to the ordinance of the past, we'll call it, or the past ordinance, what's your best argument that there still is a viable, you know, standing claim at this point for your client? For a facial challenge, it would be that under the voluntary cessation doctrine, they can revive it if they want and that they've continuously argued that there was never any issue with the ordinance. But even if the facial challenge fails, an as-applied challenge would work because in this case, the municipality actually enforced the ordinance in two different forums against Pastor Henry. And that enforcement actually gets into why Pastor Henry would have standing in regards to the prior restraint. As this Court recognized in Outdoor Advertising, Inc. v. City of Moreno Valley, the actual enforcement of the ordinance provides standing to challenge that ordinance as a prior restraint. And under this Court's other case law, namely Reel and Hunt, the threat of enforcing the ordinance provides the injury, in fact, for the prior restraint. And what the District Court found was that there was no injury, in fact, because Pastor Henry had not submitted an application to the City of Somerton and that they had not evaluated it under the required findings that they outlined in the ordinance.  What is his injury? Your Honor, his injury is being prosecuted for practicing his faith without a conditional use permit. His injury is the fact that he had to go and plead for help from the Department of Justice and the Arizona Attorney General's Office and the Office of the Arizona Governor and everybody else. What recompense does that translate into? Actual damages, I would say it would be emotional distress and mental anguish. But even if that were the case under the Supreme Court's decision in Usabuna, he would have a claim for nominal damages, which is sufficient to get him through standing and to get in front of a jury. Let me digress for a moment to ask, did this case ever go through our court's mediation program? Your Honor, we have done mediation in the past, but we have not gone through mediation at the Ninth Circuit. After discussions with the mediator, we felt that the parties were too far apart and couldn't come to a resolution. But since the ordinance has been changed, is what's hanging in the balance nominal damages, basically? No, Your Honor, we would argue that what's hanging in the balance is the emotional distress that Pastor Henry went through for being prosecuted. So nominal damages plus additional damages? Yes, Your Honor. So it's money at this point? It is money at this point, Your Honor. And you don't think that could be mediated in terms of, because that, once you get through the ordinances and all of the standing and the legal, potential legal barriers, if you're left with money damages, that seems particularly amenable to a potential mediation. I agree, Your Honor. And if this court should, I believe we, I spoke with the City of Somerton, my opposing counsel will correct me if I'm wrong, I believe we discussed going through the district court's mediation process after the summary judgment phase, unfortunately, we're here and not looking at a trial date. You potentially have another opportunity, that's all, and I'm not, I don't want to hijack your argument, but just lay that out there. But each state, and perhaps under the applicable statutes, have a different threshold for emotional distress damages. Can you tell me what you think the threshold is? Your Honor, I have, for example, and say I'm familiar with this, pretty high, it's not just irritation or, I mean, it actually requires some physical injury, do you have that? Yes, Your Honor, and we, Pastor Henry actually stated in his deposition that he did suffer some physical issues in regards to the prosecutions and the emotional distress that that took on him, like he had elevated blood pressure, he had trouble sleeping at night, things like that, but for the purposes of standing, what we would say is that oozebunum in the prospect of even recovering nominal damages would push us through standing and get us the ability to at least present these facts to a jury. And I'm not trying to quarrel with that, the reason for the digression, and I'm taking up more of your time, but I'm sure our presiding judge will allow for that, I understand entirely your clients is aggrieved, our clients, plural, are aggrieved, but I'm not sure that's going to translate now that we're just talking about money damages into a great reward that justifies the continuing stress that results to everybody as a result of this litigation, and so that's why we don't force people to mediation, but it strikes me that if there's been some time for the parties to reflect, our circuit mediation office produces effective results often, and we would be happy to make that available to you if the parties express an interest in doing so. Absolutely, your honor, and again, should this court remand this case to the district court and put us back where we were before, I would, and my opposing counsel can hold me to this, I would absolutely be willing to participate in a mediation at the district court as well. I did just want to make one point as far as the equal protection claim. The district court there found that we hadn't illustrated similarly situated persons. Under this court's analysis, what we have to do is we have to show that categories exist as a way to illustrate what the disparate treatment is and the motivating factor behind that disparate treatment. I would point to the city of Somerton's actions toward Ramon Arias, where on October 14th they were willing to give him permits to do substantially the exact same amount of work, the exact same category of work on the exact same building versus what happened on October 27th when Ramon Arias and Pastor Henry said, you know, give us the permits, we'll get the electrical permits, and the city of Somerton said, no, we're not going to give you any permits. I mean, that illustrates that the difference was that on October 14th they thought it was going to be a revenue-generating business. On October 27th they learned that it was going to be a church, and at that point they said, we're not going to give you any building permits until you get a CUP. And that shows that the only difference there was the fact that it was a church. Well, not necessarily it was a church, it was a non-revenue-generating activity. And frankly, if you're a – these aren't these people – but if you're an economic development officer, that matters to you. It isn't hostility toward religion, it's that we're trying to generate commercial activity and the hours that they're going to be operating and so forth. So I'll go ahead and say, again, I understand the case, but I'm not sure that the evidence of intentional discrimination is particularly strong because, among other things, of the factor I just referred to. I'm certain the city has its defenses, and they may have the opportunity to articulate those more fully, but not the most powerful case I've seen. Yes, Your Honor, what I would point to is the declaration of Ramon Arias, where he said, no, the city told me we don't want any more churches downtown. We will use the CUP process to block the church. That's direct evidence of discrimination based off of religion? Not necessarily. That's what I just said. It's possible they didn't want a non-revenue-generating activity there. It happened that religion was a non-revenue-generating activity, but there are other non-generating activities, too. You're down to about two minutes, but I'll give you your five and rebuttal if you want. Thank you so much, Your Honor. Good morning. May it please the Court, Counsel, Mr. Henry. I'm Katherine Bowman, appearing on behalf of the City of Somerton, Arizona, Community Development Director Carmen Juarez, and City Inspector Salvador Lopez. I would like first to address, to the extent that the Court will permit me, settlements in this case. We have had expensive settlement negotiations with a paid mediator. We have also participated in the District Court's settlement program, where we had phone conversations and settlement. And while I don't know if the Court wants the specifics, I will tell— The question is, is your view that you've exhausted settlement possibilities in this case? Yes, Your Honor. And to the extent that it's in the record of the case, the Court asked for damages briefing from both parties. And therefore, our offer of judgment, all of those things are in the record with respect to that. Is there a real controversy here anymore? There isn't a real controversy here anymore. And there's something that I would like to address that I think puts a lot of this in context, too, that I think is very important as we jump to facts. In the Court's order, and I think it's because originally there was a motion to dismiss, and therefore the Court had spent extensive time writing about the facts. If you look at the Court's decision in this case, when the Court cites the facts, it only cites to plaintiff's complaint, Document 56. The facts do not take into account any of the testimony or the subsequent proceedings. As a result, we actually filed a motion to alter the judgment on the one count that we lost on, and the Court granted that motion to alter the judgment. So when the Court looks at the opinion, or the Court's clerks look at the opinion, they will see that Document 56, the complaint, is the only thing the Court refers to. Therefore, the statement of the facts as they appear for the Court are not the same facts that developed during the testimony. So I believe that we could all agree that when you're arguing an appellate case, if a document doesn't say it and a witness doesn't say it, a brief shouldn't say it with respect to facts. So in this instance, I think counsel just said that Mr. Arias and Mr. Henry were told by Ms. Juarez that no permits would issue if they didn't also submit for the cup. That is something that was in their complaint, and for that reason, the Court cites it with a citation to the complaint. But Mr. Henry admits that he was never going to apply for the permit. He writes letters to the city that says, I do not have to apply for this permit because I was doing only repair work. From a factual standpoint, we know, not from the Court's complaint facts, but from the facts as we've stated them in the brief, that Mr. Henry was on a ladder cutting wires out of lights that he had been trying for days to get to work. So you have an old commercial building, there's no lighting in the building, no electricity is coming to the lights, even though it's on, and he is trying to repair them. That is not maintenance, any more than if you found your pool filter didn't work and you backwashed it and you got the leaves out, which would be maintenance, but it still had no electricity and you decided to cut into the electrical system. That's the kind of work that Mr. Henry was doing. So another fact that's very important is that there has never been a request from the city of Somerton, Ms. Juarez, or Mr. Lopez, that Mr. Henry get any permit except an electrical permit related to the electrical work. The installation of an exit sign, this work on the lights, so that the city could send somebody into this building where people were going to come in order to make sure that it was safe. And in the briefing, it talks about them demanding permits for texturing walls and demanding permits for laying tile on floors. None of that ever happened. And so you have the complaint by the prosecutor says electrical permit, you didn't get one. The letters from Ms. Juarez says electrical permit, you need to get one. The ROC proceeding, the charge was you're working without the electrical permit. All of this other extraneous was in the complaint, but never proved. The citation for not having obtained the CUP is happening at the same time, and so they can argue and have, you can draw inferences back and forth that perhaps the motivation with regard to the electrical work was augmented or built up because we're in this bigger battle over getting the CUP. Except the council just admitted that it was on October 27th when Mr. Henry and Mr. Arias come over to the city, that the city learned that Mr. Arias did in fact rent to a church. As stated in our brief, the inspectors had already been to the property on three other occasions. The buildings share a parking lot, so every time there would be contractors at that building, somebody from the inspector's office would go see what was happening because no permits had been issued. And so prior to there being any church there, if there was work over there, they went over there. Once they were putting in toilets, no permit needed. Once they were doing tile, no permit needed. And then this one time they went over there and Mr. Henry was working on the lights and had installed an exit sign, and there was a permit needed. All of that happened before they walk across the street and tell Ms. Juarez, we're opening a church. And at that time, she says, oh, then you need a CUP application. By that time, the stop work order is issued, the discussion has happened between Mr. Henry and Mr. Lopez about whether or not there should be electrical work. Going back to if you don't have a fact to support it, it should not be in your brief, the brief states that Ms. Juarez told Mr. Lopez to go across the street on October 27th and stop Mr. Henry from opening his church. That's what the brief says. And it cites to Mr. Lopez's report, where he says, I was ordered by my supervisor to go find out what the contractors were doing at this building, because again, they share the parking lot. It says nothing about closing a church, says nothing about Mr. Lopez knowing about a church or Ms. Juarez knowing about a church. So those types of citations that then were adopted by the court in part because it's only to the complaint makes it a little bit more difficult without going through Somerton's brief to see where the facts actually landed once there was actual discovery. Well, let me ask you this. In that location, was a church permissible? The church was permissible in that location, and Somerton kept trying to tell Mr. Henry that. So when Mr. Henry, before he rented the building, Mr. Arias made a statement to him about the city won't allow us to have a church here. That was all that Mr. Arias said to Mr. Henry. Okay, then let me cut it a little finer, though. But would a CUP be required for that building if it weren't a church? It would depend upon what the use was and whether or not it fell into any of the other uses that were in the ordinance. If it was a school, if it was going to host some kind of farmer's market. So the actual basis for this ordinance was a year-long program to revamp the zoning ordinance that required all of these meetings of the public, meetings of the Planning and Zoning Commission, meeting of the council. And where this particular aspect of the ordinance comes from is the workers on the ordinance identifying places in the little tiny downtown that has a parking issue, it's never been disputed, it's never been disputed that what they were trying to do was determine places where people came and left at the same time. Because they found that that's what was impacting their traffic. So that if, by your description, though, and by the categories of where you need the CUP or what was permitted, a church wouldn't have been permitted. It is permitted. It has to make the application so that they can see if it's going to impact the traffic and if anything needs to be done. So all of this ordinance did. It's unlike a lot of the cases we've recently seen from the Supreme Court where, you know, actual, the practice of religious freedom has somehow been infringed. Here it is, you need to apply for this CUP, which was never done. Therefore, there is never a final decision from the city as to what the city would decide. Ms. Wattis was not the final decision maker here, and her comments to Mr. Arias before Mr. Henry ever rented the building cannot be attributable to Somerton. That goes more, to my mind, to the as-applied challenge. So turn then to the facial challenge where, as I read Mr. Henry's claim, he's basically saying that that original ordinance, before it got dropped and changed, is unconstitutional on its face and that he has suffered not only nominal damages but other emotional plus damages. Why isn't that a viable claim? In part because this court in Centro Familiar said that zoning with respect to churches can be allowed as long as there is a legitimate zoning reason without any reference to the actual religious practice. So in this case, all of these people met and they looked for all of the places where the traffic might be impacted by people coming and going at the same time. What besides a church fit that category, as a matter of fact? Schools. But did you get any requests to put a school downtown? Yes, so there's 11 instances where from 2015 when the ordinance was adopted until 2017 when it was repealed, there's 11 instances where there are conditional use permits that are granted. Three of them are granted to churches. Three of them are granted to churches recommended by Ms. Juarez as the community development director and therefore there are five churches in this area. Nobody has ever denied a church a conditional use permit. Nobody has ever been denied a conditional use permit. So aside from schools, what other groups would be? There's farmer's market, there's schools, the movie theaters because they go in and out of the time. I'm trying to think of, there's a list of 11. Answer my question. Okay. Isn't the real problem here that the city decided to prosecute? When you distill everything else out, it seems like all is solvable except for the trigger point was the prosecution and then it gets dropped because saying, well, there wasn't adequate notice or something, that's the sticking point here, isn't it? If we can separate the two prosecutions, when the CUP case was filed, it was filed by the prosecutor based on information that he was conducting the religious assembly without the CUP. There isn't any indication that anybody other than the prosecutor made that decision. And so this idea of Ms. Juarez or Mr. Lopez impacting that decision, there is no evidence of that. So the prosecutor, of course, has immunity for that decision. The issue for Ms. Juarez and what the court found is that Ms. Juarez always applied the required one and she was in this enviable position of having somebody who under the ordinance was required to get a CUP and adamantly refused to participate in the process at all. And that was compounded by the fact that that person had also done electrical work that they could not inspect because they wouldn't apply for the electrical permit. So there was probable cause for these charges and there was actually an important governmental interest for them. Otherwise, Mr. Henry would have been the only church that was operating within the Somerton's small downtown who was not required to go through the conditional use permit process. I wasn't really asking you to defend the prosecution, I just said that seems to be the triggering event here that caused this lawsuit. I mean, I could be wrong on that. Then the question following from that is, does the prosecution take this out of the final decision rule? I think it puts it into a probable cause rule and I don't think that it really takes it out of the final decision rule for things like this prior restraint or these First Amendment type questions which are raising this issue about the city of Somerton itself being discriminatory and that nobody else has ever been charged, but there is no evidence and the district court found it, that there's ever been anybody who was required to get a CUP and refused to do it. At a certain point, the church is up and operating, correct? Yes. Without any of these permits? Correct. And that's the status today? Well, the status today, that is true, but the law has changed and therefore they don't require it. There was that interim period, but then the church was up and running, but then it all to put into operation in that building a church, but we still had prosecution of Mr. Henry. Yes. Potential damages resulting from that, even though the prosecution was dropped. Do you agree that there are potential nominal and other damages here from the prosecution? I don't believe that there are nominal damages from the prosecution related to causes of action that the plaintiffs have chosen to bring. First of all, I would like to say, so the Department of Justice sent their letter in February and by April, Bill Sims had written back to the Department of Justice and said,  It did take time to do that and they sent Department of Justice a draft, those kinds of things, and Mr. Henry's cup charges were dismissed then in July. So that's the period that we're talking about from January when they were filed to July when they were dismissed. As far as damages, there is no evidence in the record that any of the damages for attorney's claiming occurred during that period. As far as any- And you're talking on a summary judgment record or the motion to dismiss record? In any record, because Mr. Henry wrote a letter to the Department of Justice. The Department of Justice contacted Somerton and Somerton dismissed the charges. There's obviously a lag in there, but there's no court proceeding, to my knowledge. No, there wouldn't be. We're obviously looking at standing here carefully, but that didn't seem to be an issue in the district court, correct? The district court did look at standing. But it basically bypassed saying there was standing for everything, correct? No, the court dismissed the prior restraint- Oh, the prior restraint one, yes. For standing. But the others, let's say the facial claim, it would seem to me that at the stage where it was, that you wouldn't necessarily have offered up your evidence of damages if you had some. Right. The court found that the damages that were being alleged, because remember, the court also had pleadings on damages, that the damages that were being alleged were the cost of litigating the criminal case and the ROC case. The court found that there was probable cause for those proceedings. And the court, from a rightness standpoint, found that things were not right because there had not yet been any type of decision that actually could be attributable to Somerton and that Juarez and Lopez were entitled to qualified immunity. And therefore, there was no avenue there. So you had to get to Somerton, and Somerton had never made a decision. You have to realize, Your Honor, in this context, in the way that it occurred, there is no indication that any final decision maker in Somerton even knew Mr. Henry had a church or that he was being prosecuted, that the city council knew that, that some type of final decision maker with respect to the First Amendment claims was even aware. The other issue is that, or that Ms. Juarez's statements are statements of Somerton. If she is speaking to Mr. Arias before Mr. Henry rents the property, and she is not the final decision maker, her, even her interpretations of the code are entitled to review. And in their briefing, the council says, oh, but you didn't have an appellate process. That was true for the stop work order. But it wasn't true for interpretations of the community development director. The ordinances say anything the community development director decides is appealable to the Planning and Zoning Commission, and then appealable to the council, and then appealable to Superior Court. So there's no final decision that can be said to be discriminatory here on behalf, as far as Somerton itself. Well, did the city, the district court says, and I'm just quoting, on November 21st, 2016, the city sent Mr. Henry a letter stating that the city was preparing a criminal citation against him for violating the ordinance unless he obtained a CUP, inappropriate work permits. Right. And. Is that true? Well, it's true that the letter says that, and it's, but what is not true is that the state brings an action. There is, in Arizona, there is no city versus Mr. Henry. You can't have the city bring an action. It is brought in the name of the state, and there's statutes that talk about the relationship between the prosecutor and the state. We didn't have to get into that in this case, because they never. I understand that, but I mean, there's, the inference is there's a reference from the state, and the city sent a letter saying the city was preparing a criminal citation. And I believe if you're talking about the one for the electrical permit or the CUP, I'm sorry, if it's the electrical permit, Mr. Watt, Ms. Watt has actually asked that a citation be issued to the building owner, Mr. Arias, which also shows that they are not discriminating against Mr. Henry. Her, it was the prosecutor on her own who then vacated the citation against Mr. Arias, and in looking at the file, determined that Mr. Henry was the proper defendant. With respect to the electrical permits and things like that, the city didn't even ever ask that the charges be filed against Mr. Henry. For some reason, Ms. Watt has thought the building owner would be responsible for those violations. Right. Well, I'm just trying to parse standing and injury, and you know, you're saying, well, the prosecutor acted by himself or herself, and actually the city was the one who sent the enforcement letter. So you can't completely divorce the city from the prosecution, I don't think. You can't completely divorce the city from the prosecution, but the law basically passes the baton to the prosecutor at the time that the prosecutor makes the charging decision. So if you have a situation where somebody recommends prosecution, that person is not on the hook. If then the prosecutor looks at it and the prosecutor proceeds without probable cause or the county attorney proceeds without probable cause, the person is on the hook for the period of time until the prosecutor makes that independent judgment. But again, we didn't have to brief all of that because their argument was never an issue with what the prosecutor had actually done. But if I can say with respect to Mr. Henry's damages, Mr. Henry, according to his deposition, retired from the police department in part because of high blood pressure. There's no medical evidence or any evidence that somehow there's causation between any physical ailment and the emotional distress that comes from receiving a citation. And so I don't believe that, you know, under Arizona law, you have to have some kind of We just don't have evidence of that. And I think that's part of the reason why the district court doesn't discuss it. The district court only says. The district court didn't get to damage. Well the district court does get to damage in the context of the prior restraint claim and standing and says and says that but but refers to the facts and to the damages motion. And what it says is that it quotes Mr. Henry's counsel saying all damages here flow from the expense of the prosecution and the defense and and because there wasn't evidence of of these emotional damages. Questions of taking over your time. Thank you for your argument. Thank you. And we'll give you the five minutes you requested for rebuttal. Thank you so much, your honor. I just wanted to address a few issues. The first being that there is a clear case of controversy. Mr. Henry was prosecuted for not having a CEP and whether that equals nominal damages or more. There were we've just been through this. That may or may not. I mean, there's a pretty good argument that the prosecutor is responsible for that. Prosecutor is immune and how much is the city liable for what happens after the prosecutor says, OK, let's go for it. What I would point you to, your honor, is that there's an email from Mr. Bill Sims on April 21st where he says, hey, to Mr. Henry's attorney at the time and he says, hey, have your client apply for the CEP, have your client apply for the bill, apply for the CEP first, get the CEP, apply for the building permits, and then we'll drop the prosecution. That didn't come from the city. That didn't come from the city's prosecutor. That came from the city of Somerton's private counsel, who I believe was acting as the city attorney at the time. But that resolution, I don't know that that's a real strong case for responsibility. The other thing I would point you to, your honor, is that initially at the ROC, what the ROC did is when they got the complaint, they said, oh, oh, this is Salvador Lopez, an individual, versus, you know, Stephen Henry doing business as Arizona Blue Line. And the city of Somerton actually corrected them and they said, no, no, this isn't Salvador Lopez. This is the city of Somerton versus Arizona Blue Line, or Stephen Henry doing business as Arizona Blue Line. And then the city attorney actually prosecuted that case before the ROC's ALJ. So from that perspective, the city was in charge entirely of the ROC case, and there is some evidence, and we point to it in our summary judgment briefing, that the city did have quite a bit of influence over the city prosecutor. So, I think that there's enough evidence there that this should have been presented to a jury, and a jury should have been the ones who got to decide, oh, yeah, you know, the city was showing a lot of influence over this prosecutor, and the city was really controlling this prosecution from the start. But ultimately, the complaint is the prosecution, and that's the, ultimately, the independent decision of the prosecutor, isn't it? I mean, in every prosecution, you know, there's investigative and other things that lead up to it, and may influence it, witnesses, but the decision to prosecute is the decision of the prosecutor who is immune. Yes, Your Honor, and that's why we didn't file suit against the prosecutor. Well, I understand, but then it kind of pulls the rug out, not to your fault, but the immunity and the situation with the prosecutor kind of pulls the rug out from under your claim about, well, we got prosecuted, and then it got dropped. Yes, Your Honor, what I would also point to is that the prosecutor made some statements in the record where, you know, she indicated, I would have prosecuted any, I would have prosecuted anything that the city told me if, you know, if it was a racially discriminatory ordinance. You know, the ham sandwich, but the prosecutor, the prosecutor gets the immunity, right? Yes, Your Honor. So I'm not sure if that's true, and the crux of the case seems to be the prosecution, because of course, Mr. Henry did open his church and operate his church. Between that and having a prosecution that's dropped, kind of what are you left with? That's what I'm trying to figure out. I would argue the ROC prosecution entirely, because that was entirely driven by the city of Somerton. Again, they... That doesn't mean you can hold somebody else responsible once the prosecutor's made an independent decision, so look hard at that. Yes, Your Honor. What I would say is that the ROC in this case didn't prosecute that case. They left that to the city of Somerton to do, and the city... Well, that was the prosecution with regard to not obtaining permits, which may or may not be linked to your allegation of religious discrimination. I'm not sure there's so much strength in that case either. Basically, this is just a suggestion that's worth everybody going back and taking a look at the case and deciding, is there enough here to justify what continues to be a crusade that may not actually pay off or be worthwhile for anybody in the end? I have no doubt about the grievance that your clients have suffered. I'm not sure it's going to translate to a payday in court. Absolutely, Your Honor. What I would say... I just would like to end with this, that Mr. Henry's not asking for the world. I think what we've seen here with the court is that there's so many disputed facts in this case that summary judgment really was inappropriate here. All we're asking for is to remand this case so that we can present those facts to a jury and they can make a final determination, and or we can hopefully get back to... It's a very expensive process. Yes, Your Honor. I agree. What's really at issue worth the time, expense, and additional aggravation from that? I've got real doubts. The one thing I would say, Your Honor, and I think the Tartikoff case really gets into this is, you know, it's a discrimination issue. In this case, Stephen was discriminated against because he wanted to open a church, because he wanted to practice his religion. And that's his understanding. I'm not sure a jury's going to reach the same conclusion. Yes, Your Honor. I agree, and I think that a jury should be given the opportunity. And it is your client's decision along with advice, correct? Yes, Your Honor. Ultimately, he's the only one who can make that determination. You know, we'll take the legal issues straight up. Don't worry about that. But on the other hand, you folks have to live together in this town, and I hope sometimes you can put these many grievances aside. And that's none of our business, but I hope you can. I know small towns. I grew up in one. Anyway, the case just arguably submitted for decision. Thank you very much for coming to Anchorage. And we've learned a lot today, so thank you for your arguments. And we'll be in recess for the morning. Please rise.
judges: THOMAS, McKEOWN, CLIFTON